_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JUL 24 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                  DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA, <br><br> Defendants. | CASE NO. **CR19-140 JLR** <br><br> INFORMATION |

The United States Attorney charges that:

## COUNT 1
**(Conspiracy to Defraud the United States)**

At all times relevant to this Information:

**A.    Introduction**

1.    Point of Sale (POS) computer systems were commonly used by retail businesses and restaurants to facilitate point-of-sale transactions, keep track of dates and times, customers, servers, tables, orders, payments and refunds. All transactions were recorded in a database maintained by the POS software in real-time, which allowed database operations to conveniently perform various calculations (e.g., to calculate monthly revenues).

2. In POS systems, each sales transaction was assigned a unique transaction number identifying the transaction. The data of each transaction should have been immutable. If a sale was voided or a return was made, the original sales transaction should have been preserved and a new one should have been created to indicate the final outcome. All user and administrative functions should have been logged.

3. Government taxing authorities have routinely accepted calculations derived from the electronic database maintained by the POS system with the condition that electronic sales data must be complete, accurate, and furnished to the agencies on request. Use of a POS system obviated the need to maintain physical receipts for tax purposes. The use of electronic sales records as the basis for calculating taxes was convenient and cost-effective, but the integrity of the system depended on comprehensive logging and immutability of the data.

4. Some POS systems had companion software programs, known as Revenue Suppression Software (RSS), Cash Suppression Software or, colloquially, as a "Zapper" program. RSS was a software program used to modify a business's POS database for the purpose of tax evasion by deleting or reducing cash sales transactions. When executed, the RSS program deleted all or some of the cash transactions from the database and then reconciled the books of the business. The result was reconciled business records that appeared to be complete and accurate but which, in fact, were false and fraudulent in that the records showed less than the true income.

5. The only purpose of an RSS program was to falsify business records. Use of RSS to defraud taxing authorities was illegal and, since 2013, simple possession of RSS had been prohibited in Washington State. RCW 82.32.290(4)(a).

6. SmilePOS was a Lynnwood, Washington company that created a POS system as well as a companion zapper program. At all times relevant to this Information, S.U. was the owner and chief executive officer of SmilePOS.

7. PORNCHAI CHAISEEHA and CHADILLADA LAPANGKURA were a married couple residing in Washington State.

8. PORNCHAI CHAISEEHA and CHADILLADA LAPANGKURA were part owners in multiple Thai restaurants located in Washington, Oregon, and Hawaii. Some of the restaurants operated under the name "Bai Tong," while others were called "Noi" (collectively, "Bai Tong Restaurants").

**B.     The Agreement**

9. Beginning at a time unknown, but no later than 2010, and continuing through August 2, 2017, at Redmond and Tukwila, within the Western District of Washington, and elsewhere, CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA knowingly and intentionally did conspire, combine, confederate and agree with others, known and unknown to the United States Attorney, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment and collection of revenue, to wit, federal income and payroll taxes.

10. The essence of the agreement was for CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA and others to obtain, install and operate a POS system that allowed themselves, and others, to omit some cash sales from certain Bai Tong Restaurants' accounting records, and create an inaccurate free-standing set of records that omitted those cash sales. The records omitting the cash sales were then provided to accountants as if they were genuine, all-inclusive records. CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA intended that these false records be used as a basis for relevant state and federal tax returns. As a result, the omitted income was not reported as revenue to state or federal tax authorities, and CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA reviewed, signed, and filed false income and sales tax returns omitting this revenue. It was further part of the agreement that the unreported proceeds were then used by CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA to pay employees and for other business and personal

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WA 98101
(206) 553-7970

expenses. Finally, CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA filed false federal payroll tax returns and failed to pay federal employment taxes on the cash used to pay Bai Tong employees.

C. **Manner and Means of the Conspiracy**

11. It was part of the conspiracy that CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA installed and caused to be installed SmilePOS software as well as the RSS at Bai Tong Restaurants located in Redmond, Washington (Bai Tong Redmond), Tukwila, Washington (Bai Tong Tukwila), and Bend, Oregon (Noi Thai Cuisine Bend).

12. It was further part of the conspiracy that CHADILLADA LAPANGKURA and others, acting at her direction, communicated with S.U. and other SmilePOS employees about the operation and functionality of the RSS at the Bai Tong Restaurants.

13. It was further part of the conspiracy that CHADILLADA LAPANGKURA used the RSS system to delete cash sales at Bai Tong Redmond, Bai Tong Tukwila, and Noi Thai Cuisine Bend, and directed another Bai Tong Restaurant partial owner, J.C., and another employee, to do the same.

14. It was further part of the conspiracy that CHADILLADA LAPANGKURA provided reports from SmilePOS that omitted some cash sales to Bai Tong Restaurants' third-party accountant and tax preparer, and directed other Bai Tong employees to do the same. CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA knew the false business records created by the RSS omitted substantial income earned at Bai Tong Redmond, Bai Tong Tukwila, and Noi Thai Cuisine Bend. The submission of false business records was done for the purpose of paying less than the legally-mandated taxes.

15. It was further part of the conspiracy that CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA received daily emails from SmilePOS summarizing total daily sales, total daily payments by credit card, and total daily cash payments, among

other things for each Bai Tong Restaurant. These emails showed the true sales of the businesses, prior to any deletion of cash transactions.

16. It was further part of the conspiracy that CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA did not tell their third-party accountant/tax preparer about the RSS, the unreported cash, or the cash paid to Bai Tong Restaurant employees.

17. It was further part of the conspiracy that CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA used the cash revenues, which had been deleted from the POS system, for the payment of personal expenses, the payment of Bai Tong Restaurants' employees, and other business expenses.

18. It was further part of the conspiracy that some of the cash omitted from income records was transferred to bank accounts in Thailand, of which CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA were owners and signors. Although required by law to do so, CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA failed to disclose the existence of these foreign bank accounts on their federal income tax returns.

19. It was further part of the conspiracy that CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA filed false Forms 941, U.S. Employer's Quarterly Federal Tax Return, and did not pay federal employment taxes on the cash wages paid to Bai Tong employees.

20. It was further part of the conspiracy that, for tax years 2011 through 2016, CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA reviewed, signed and submitted false tax returns, which had been created based on the false business records, to government taxing authorities, including the United States Department of the Treasury and the Washington State Department of Revenue, including, specifically, Forms 1040, Forms 1120-S and Forms 1065, and Washington Combined Excise Tax Returns, for themselves and Bai Tong Redmond, Bai Tong Tukwila, and Noi Thai Cuisine Bend, which significantly understated taxable income. The business returns under-reported revenue by $1,034,750. The additional state and federal tax due on the unreported

income for the tax years 2011 through 2016 was two hundred ninety-nine thousand, eight hundred and six dollars ($299,806).

D. **Overt Acts of the Conspiracy**

21. In furtherance of the conspiracy CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA and their co-conspirators performed one or more of the following overt acts, including but not limited to:

    a. On or about June 19, 2014, CHADILLADA LAPANGKURA sent a text message to SmilePOS owner, S.U., asking S.U. to delete the RSS program from the Redmond Bai Tong location in advance of a Washington DOR audit of Bai Tong Redmond.

    b. On or about August 27, 2015, CHADILLADA LAPANGKURA and PORNCHAI CHAISEEHA signed a false Form 1040, U.S. Individual Income Tax Return, for tax year 2014, which under-reported their income.

All in violation of Title 18, United States Code, Section 371.

DATED this 24TH day of July, 2019.

BRIAN T. MORAN
United States Attorney

ANDREW C. FRIEDMAN
Assistant United States Attorney

MATTHEW D. DIGGS
Assistant United States Attorney